MARVIN, EXECUTOR, v. STIMPSON, EXECUTRIX, ET AL.

1. DEEDS—CONSTRUCTIVE DELIVERY.
When it is manifest from the acts and agreement of the parties that it was the intention of the grantor to invest the grantee with the immediate ownership of the property and of the grantee to accept the same, such intent and purpose is sufficient to constitute a constructive delivery of the deed, even though the actual custody thereof remained in the grantor or some third person.

2. SAME—EQUITY.
By a contract of dissolution of partnership between S. and B., an obligation was imposed upon B. to "grant, assign, transfer, set over and convey * * * by good and sufficient deed, executed and delivered contemporaneously with this agreement," all his right and interest in the partnership property to S., who already held the legal title. *Held*, regardless of whether there had been an actual delivery of the deed, that under the circumstances of the case the obligation and duty to convey is equivalent to a conveyance. The maxim that "equity considers that done which ought to be done," is discussed and applied.

*Appeal from the District Court of Pueblo County.*

THIS is a suit in equity instituted by Norman R. Barnard against the widow and heirs at law of George B. Stimpson, deceased, for the rescission of a certain contract entered into by the plaintiff and said Stimpson. The complaint, in substance, avers that from the 17th day of July, 1866, to the 15th day of December, 1890, the plaintiff and George B. Stimpson were copartners, and as such owned in equal parts

certain described real and personal property, the legal title to which stood in the name of Stimpson; that on the 15th day of December, 1890, the said Barnard and Stimpson entered into a certain written agreement, which, by stipulation of counsel, is set out in full and made part of the complaint, and which, after reciting the existing copartnership between plaintiff and Stimpson, and that they were equally interested in the property, real and personal, held in the name of Stimpson, and that such copartnership was indebted to divers persons, contains the following covenants:

"Now, therefore, the said Norman R. Barnard, in consideration of the sum of five thousand dollars ($5,000.00), immediately upon the death of the said Norman R. Barnard to be paid by the said George B. Stimpson to Amanda M. Cullings, the sister of said Barnard, her heirs or assigns, and the further consideration that the said George B. Stimpson shall and will maintain, support and provide the necessaries of life for the said Norman R. Barnard in a suitable and decent manner, during the lifetime of the said Norman R. Barnard, doth hereby consent to sever himself from the said copartnership with the said George B. Stimpson, and doth hereby agree to grant, assign, transfer, set over and convey unto the said George B. Stimpson, his heirs and assigns, forever, by good and sufficient deed executed and delivered contemporaneously with this agreement, all the right, property and interest whatsoever which he, the said Norman R. Barnard, hath or should have in and to all and singular, the goods and debts and other property, both real and personal, held by and being in the name of said George B. Stimpson, and owned by them as copartners, the said real property to be conveyed being described as follows: * * *

"And the said Norman R. Barnard, for himself, his heirs, executors, administrators and assigns, does covenant with the said George B. Stimpson, his heirs and assigns, that he, the said Barnard, shall not release, discharge, sell or convey in any manner whatsoever, any of the goods, debts or other property, real, personal or mixed, hereinbefore mentioned as

belonging to the said copartners, or do any act to hinder the said Stimpson from receiving and enjoying the same, but will permit the said Stimpson to recover, receive, hold and possess the same absolutely to his own use, without any account to be rendered therefor to the said Norman R. Barnard, and that the said Norman R. Barnard, upon request, will do any and all reasonable acts which may be necessary or convenient to assist the said Stimpson to recover and receive the same.

" And the said George B. Stimpson, for himself, his heirs, executors, administrators and assigns, does covenant that he will, at the death of said Norman R. Barnard, as aforesaid, pay to the said Amanda M. Cullings, her heirs or assigns, the said sum of five thousand dollars ($5,000.00) ; that he will maintain, support and provide for the said Norman R. Barnard during the lifetime of said Barnard, in a decent and suitable manner, and that he will at all times hereafter pay and satisfy all the creditors to whom the said Norman R. Barnard may stand chargeable or indebted for and concerning all the affairs and dealings of the said copartnership, and will at all times hereafter indemnify and save harmless the said Norman R. Barnard, his heirs, executors, administrators, from all the debts, and liabilities, and every of them of the said copartnership."

It is further stipulated that the deed mentioned and referred to in said contract is in words and figures following, to wit :

" Know all men by these presents, that I, Norman R. Barnard, of the county of Pueblo and state of Colorado, for and in consideration of the sum of one dollar ($1.00) to me in hand paid by George B. Stimpson, of the county of Pueblo and state of Colorado, the receipt whereof is hereby acknowledged, and in further consideration of the covenants and conditions contained herein, and of the signing and sealing and delivery of a certain article of agreement bearing even date, and made contemporaneously herewith, the said covenants and conditions to be kept and performed by the grantee herein, have remised, released and quitclaimed, and by these presents do remise, release and quitclaim unto the said

George B. Stimpson, and to his heirs and assigns forever, all the following described premises situated in the county of Pueblo and state of Colorado, to wit: * * *

"Together with all and singular the hereditaments and appurtenances thereunto belonging or in any wise appertaining, and all the estate, right, title, interest, claim or demand whatever by me, the said Norman R. Barnard, either in law or equity of, in and to the above bargained premises.

"To have and to hold the same to the said George B. Stimpson, and to his heirs and assigns forever.

"In witness whereof I have hereunto set my hand and seal this 15th day of December, A. D. 1890.

[Signed]    "NORMAN R. BARNARD.    [Seal]
"Signed, sealed and delivered in the presence of:"

Which deed was duly acknowledged in due form of law.

On the 21st day of November, 1892, George B. Stimpson died, leaving surviving him the appellees as his only heirs at law, and by his last will and testament, made on August 27, 1892, he bequeathed to his widow all the property, both real and personal (except a few articles of personal property to his son William), and ordered and directed her to make adequate and suitable provision for the support and maintenance of the plaintiff during his lifetime.

It is further stipulated and agreed, by and between the respective counsel, and admitted as fact, that at the time of the death of George B. Stimpson, said contract and deed were both inclosed in a sealed envelope, which envelope, with said contents, was then in the custody of the First National Bank of Pueblo, which envelope bore the following indorsement thereon:

"The property of Norman R. Barnard and George B. Stimpson, to be delivered at the death of either party to the survivor, or to both whenever demanded, both parties being present.

[Signed]    "JOHN H. MITCHELL,
                           "Atty. for Said Parties."

The complaint avers " that the plaintiff has at all times complied with, and stood ready and willing to perform his obligations under, the contract; " and a failure on the part of George B. Stimpson to support and provide for plaintiff from June, 1891, to January, 1892, inclusive ; and an insufficient compliance with the terms of the agreement on the part of Georgia A. Stimpson from January to August, 1893, inclusive.   It appears that George B. Stimpson, after the execution of the agreement, assumed exclusive ownership and control of the partnership property, and on August 22, 1892, conveyed a portion thereof to his daughter Adelaide, and that since his death his widow and sole devisee has exercised exclusive control and ownership over the rest of the property in controversy.

Among other relief, plaintiff asks a rescission of the contract, and that said copartnership be decreed to exist, and for an accounting, etc.   The appellees interposed a general and special demurrer to this complaint, which was sustained, and the action dismissed.   To reverse this judgment appellant, as executor of the estate of Norman R. Barnard, deceased, prosecutes this appeal.

Mr. B. F. McDaniel and Mr. F. H. Schrock, for appellant.

Messrs. Waldron & Devine, for appellees.

Mr. Justice Goddard delivered the opinion of the court.

The foregoing statement sufficiently presents the material averments of the complaint upon which appellant predicates his right to the relief asked ; his contention being that the deed referred to in the stipulation was never delivered to the grantee, George B. Stimpson, so as to become an operative transfer to him of Barnard's interest in the property, and that the written contract entered into on the 15th day of December, 1890, is executory, and subject to rescission at any time for the nonperformance of its covenants by Stimpson or his

representatives ; it being, as we understand, conceded by counsel that if the contract had been executed and the transfer of Barnard's interest in the property to Stimpson consummated, the present action cannot be maintained. The question therefore submitted for our determination is whether, under the circumstances surrounding the transaction, the facts alleged and admitted constitute, in law, a delivery of the deed mentioned ; and also what effect should be given to the agreement itself as a conveyance of Barnard's equity in the property. Upon the first proposition, we find in the written agreement language, unequivocal in its import, to evidence the delivery of the deed. In the covenant on the part of Barnard, the following language is used :

"Now, therefore, the said Norman R. Barnard, in consideration * * * doth hereby consent to sever himself from the said copartnership with the said George B. Stimpson, and doth hereby agree to grant, assign, transfer, set over and convey unto said George B. Stimpson, his heirs and assigns, forever, by good and sufficient deed, executed and *delivered* contemporaneously with this agreement, all the right, property," etc.

And again the following:

"And the said Norman R. Barnard, for himself, his heirs, executors, administrators and assigns, does covenant with the said George B. Stimpson, his heirs and assigns, that he, the said Barnard, shall not release, discharge, sell or convey in any manner whatsoever, any of the goods, debts or other property, real, personal or mixed, hereinbefore mentioned as belonging to the said copartners, or do any act to hinder said Stimpson from receiving and enjoying the same, but will permit the said Stimpson to recover, receive and hold the same absolutely to his own use, without any account to be rendered therefor to said Norman R. Barnard, and that the said Norman R. Barnard, upon request, will do any and all reasonable acts which may be necessary or convenient, to assist said Stimpson to recover and receive the same."

In addition to this express agreement to transfer and con-

vey all his right and interest in the property by a deed "executed and delivered contemporaneously with the agreement," the complaint avers "that plaintiff has at all times complied with * * * his obligations under the contract." We think the language of this agreement, when read in the light of all the circumstances surrounding the transaction as set out in the complaint, clearly imposed an obligation upon the plaintiff to convey his interest in the partnership property contemporaneously with the execution of the agreement, and to deliver the deed at that time; and the averment that plaintiff had complied with his obligations, in effect avers such a delivery.

It appears from other averments in the complaint that, upon entering into the contract, Stimpson assumed control over and held the property absolutely as his own, exercised acts of ownership over it, and transferred, by a voluntary conveyance, an interest in a portion of the property to his daughter, and by his last will and testament bequeathed all of the remainder to his widow. It also appears that plaintiff did in compliance with his obligation, immediately sever himself from the copartnership, and permit Stimpson to receive and hold the partnership property absolutely as his individual property; and we think it would be doing violence, not only to the plain import of the language used in the agreement, but to the evident intent of the parties, to construe the delivery therein provided as contemplating any other than one *in presenti.* What is essential in law to constitute a delivery of a deed has been considered in many of the adjudged cases, and the generally accepted rule is that when, from the acts and agreements of the parties, the intention of the grantor to invest the grantee with the immediate ownership of the property, and of the grantee to accept the same, is manifest, such intent and purpose is sufficient to constitute a constructive delivery of the deed, even though the actual custody thereof remained in the grantor, or some third person.

In *Ruckman v. Ruckman,* 32 N. J. Eq. 261, the rule is thus concisely stated: "Whenever it appears that the contract or

arrangement between the parties has been so far executed
or completed that they must have understood that the grantor
had divested himself of title, and that the grantee was in-
vested with it, delivery will be considered complete, though
the instrument itself still remains in the hands of the grantor."

The supreme court of Oregon, in the case of *Flint v.
Phipps*, 16 Ore. 437, states the rule thus: "It is conceded
that no particular form of words is necessary to constitute a
delivery. 'It is not necessary' said Lord, C. J., in *Fain v.
Smith*, 14 Ore. 82, 'there should be an actual handing over
the instrument, to constitute a delivery. A deed may be
delivered by doing something and saying nothing, or by say-
ing something and doing nothing, or it may be by both.' "
To the same effect are *Brown v. Brown*, 66 Me. 316; *Moore
v. Hazelton*, 9 Allen, 102; *Gould v. Day*, 94 U. S. 405.

Under this rule, that which is admitted to have been said
and done by Barnard and Stimpson would certainly consti-
tute such a delivery of the deed as would vest the grantee
with the title, notwithstanding the fact that at the time of
Stimpson's death, which occurred nearly two years after the
admitted execution of the agreement, the deed and agree-
ment were found in the First National Bank of Pueblo,
inclosed in a sealed envelope, bearing the indorsement set
forth in the stipulation. This circumstance, unexplained, is
at most a recognition of the joint ownership of the parties
in the documents, which could not have existed if the deed
had not been delivered. Without any authority being shown
for John H. Mitchell to make such an indorsement, it would
be unwarranted, we think, to give to it the force and effect
of an escrow that would contradict the express covenant on
the part of Barnard to deliver the deed contemporaneously
with the execution of the contract, and put it in his power,
upon Stimpson's death, no matter how faithfully he might
have complied with every provision of the agreement on his
part, to prevent the deed from ever taking effect. That
Stimpson never contemplated such a contingency is evi-
denced by his dealings with, and disposition of, the property,

and by the direction in his last will for the carrying out of such provisions by his widow.

But we do not regard the actual delivery of the deed in question as controlling in this controversy, or as essential to the transfer to Stimpson of Barnard's equity in the partnership property, since the effect of the contract of dissolution, in and of itself, was to divest Barnard of such equity, and vest it in Stimpson. This contract was duly entered into by the parties on the 15th day of December, 1890, and became mutually obligatory upon each from the date of its execution. The obligation thus imposed upon Barnard was to "grant, assign, transfer, set over and convey * * * by good and sufficient deed, executed and delivered contemporaneously with the agreement," all his right, property and interest in the partnership property, to George B. Stimpson, who already held the legal title.

A present obligation and duty to convey will be treated, in an equitable proceeding like this, as equivalent to a conveyance, under the maxim that "equity considers that done which ought to be done." In discussing this principle and the manner in which equity deals with executory contracts for the sale of land, Pomeroy, in his work on Equity Jurisprudence, section 368, says:

"The full significance of the principle that equity regards and treats as done what ought to be done throughout the whole scope of its effects upon equity jurisprudence, is disclosed in the clearest light by the manner in which equity deals with executory contracts for the sale of land. * * * In some respects, and for some purposes, the contract is executory in equity as well as at law; but so far as the interest or estate in the land of the two parties is concerned, it is regarded as executed, and as operating to transfer the estate from the vendor and to vest it in the vendee. By the terms of the contract the land ought to be conveyed to the vendee, and the purchase price ought to be transferred to the vendor; equity, therefore, regards these as done: the vendee as having acquired the property in the land, and the vendor as

having acquired the property in the price.  The vendee is looked upon and treated as *the owner of the land;* an equitable estate has vested in him commensurate with that provided for by the contract, whether in fee, for life, or for years; although the vendor remains owner of the legal estate, he holds it as a trustee for the vendee to whom all the beneficial interests has passed, having a lien on the land, even if in possession of the vendee, as security for any unpaid portion of the purchase money." * * *

" As the vendee has acquired the full equitable estate—although still wanting the confirmation of the legal title for purposes of security against third persons—he may convey or incumber it; may devise it by will; on his death intestate, it descends to his heirs, and not to his administrators." * * * Story's Eq. Jurisprudence, section 790.

Tested by this principle, the agreement under consideration must be treated as fully executed on the part of plaintiff, and as operating to transfer his interest in the property to Stimpson at the time of its execution.  It follows that this action cannot be maintained, and the judgment of the court below, dismissing the complaint, must be affirmed.

*Affirmed.*