No. 9054.

McGOWAN ET AL. *v.* LOCKWOOD ET AL.

1. DEEDS—*Delivery.* The voluntary delivery of a conveyance of lands by the grantor to the grantee is effectual, though the grantee is not, at the time, informed of the contents or purpose of the paper so delivered.

2. —— *Acceptance,* by the grantee is presumed where the delivery is unconditional, and the conveyance beneficial.

*Error to Denver District Court, Hon. John A. Perry, Judge.*

Mr. HUGH McLEAN, Mr. E. E. SCHLOSSER, for plaintiffs in error.

Mr. E. E. WHITTED, Mr. L. B. BURROW, for defendants in error.

Mr. Justice Scott delivered the opinion of the court.

THIS action by plaintiff in error, plaintiff below, is in form to quiet title to certain lots, upon two of which is situated the dwelling house in which the plaintiff and his deceased wife lived at the time of her death, and two other lots in the city of Denver. The cause was tried to the court and judgment rendered against the plaintiff, who brings the case here for review.

There is no conflict in the testimony as to any material fact in the case.

It appears that the plaintiff, Henry McGowan, married Emergene McGowan, his deceased wife, in 1876, and they lived together until the time of her death. At the time of their marriage Mrs. McGowan was the mother of two girls by a former marriage, since married, and now Lodena Lockwood and Estella O'Grady, then living in distant states— the latter now deceased—but both living at the time of the death of their mother. The plaintiff can neither read or write, except to sign his name. Mrs. McGowan died November 8th, 1904. At the time of her death the title to the lots in question was standing in her name. The lots upon which the dwelling is situated were purchased by

the plaintiff, and the deed taken in his own name December 29th, 1888. He conveyed the lots to his wife April 18th, 1894.

McGowan constructed the dwelling on the lots, and at the time of the commencement of it, he had $1,700.00 in the bank, which was used for that purpose, and he did much of the labor on it personally. He testified that, "we kept but one pocketbook in our house. I didn't know when I had a suit of clothes or a shirt. She bought all my clothes. She bought the coal and done the business, and I gave her my money, and she took good care of me." So far as the record discloses, their family life appears to have been ideal. The following unquestioned testimony from the plaintiff best shows the relationship between these two, as going to the question of intent in the matter of the conveyance here in dispute.

"In 1888 I got a deed to this property from a man by the name of Clayton. My wife and I went up to Leonard & Montgomery's office, and we paid three hundred dollars cash, and he took one and two-year notes for the rest. I trusted to my wife.

I got a patent for the ranch in Weld County from the government. I never dealt in real estate. These are the only lots I ever bought in my life.

I proved up on the land in Weld County according to law, and I got a patent. I believed the patent came to the house addressed to me. It was in my name. My wife opened the envelope. She opened all the mail that came to me. She done the business, really, because she had an education and I trusted to her. My wife didn't work and earn her own money all the time. We had a little girl, and she was about four years old when she died, and she didn't work during that time; and then again about three years before she died she didn't work. She went East twice, she was sick; and then she sent about five hundred dollars of her earnings to take this Mrs. O'Grady from Australia."

Mrs. McGowan became severely ill several weeks before her death, and on the 15th day of October, 1904, or about three weeks prior to her death, sent for a notary public and executed a quit claim to her husband for the premises involved. The consideration being "the love and affection she bears toward her husband, Henry McGowan." This was without the knowledge of plaintiff.

Plaintiff testifies that three or four days before her death, and just after he had telegraphed her daughters as to her condition, he entered her room and she said: "Henry, I am never going to get off this bed." 'Well,' says I, 'I have seen you through three or four bad spells, and I think you will pull through this.' 'Now,' she says, 'go to the closet, in the stocking bag, there is a hundred or ninety dollars,' I couldn't say which, 'and take that down and put it in the tool chest, but don't carry it down town.' She says, 'there is a great many coming in and out here, and I can't watch them; and go to that cupboard there and get me the envelope, a big envelope,' she says. I did, and under the bottom drawer was a secret drawer, and I did, and she looked at it, and she says, 'That is not the one,' she says, 'Get the one with the blue cover.' I done it, and she looked at it, and she says, 'That is the one. Put that down in your tool chest and lock it; put the key in your pocket.' She says, 'You know the girls don't like you.'

He says that she did not tell him what was in the envelope, and that he did not know until about three months afterward, when he asked a Mr. Hart, who had written letters for him, to examine the paper, and who advised him that it was a deed from his wife to him for the premises involved, and that this was his first knowledge that the paper contained in the envelope was a deed to him. This is corroborated by Hart.

Jesse Crook, the notary public who took her acknowledgment, testifies that Mrs. McGowan said at the time, in addition to formal statements, that she wanted the home to go to Mr. McGowan.

Mrs. LaBrie testified that she lived as a neighbor to the McGowans for six years prior to Mrs. McGowan's death; that in June, 1904, she had a conversation with Mrs. McGowan about the property, and again about three or four weeks before she died, in which she said she was going to make a deed for it to Mr. McGowan, and at a later date, in which she said she had fixed it all up.

A few days after Mrs. McGowan's death the two daughters and McGowan proceeded to the office of Mr. Schlosser, an attorney, where a deed was made by the sisters to McGowan, giving him a life interest in the property, and also when McGowan executed a deed to the sisters for his farm in Weld County, reserving a life estate. This seems to have been done at the instigation of the defendant, Lodema Lockwood, who insisted that this was the desire of the deceased wife. McGowan at that time had no knowledge that the paper in his possession was a deed to him for the premises.

Schlosser, the attorney who drew and acknowledged these instruments, says he was not acquainted with McGowan at the time and was introduced by Mrs. Lockwood; that Mrs. Lockwood did all the talking. Schlosser further testified:

"They (the sisters) seemed to be so much pleased with it, with the understanding, that they wanted it the way Mr. McGowan apparently consented to. I don't think Mr. McGowan understood the provision. He really wasn't conscious of it. That is my impression after learning subsequent facts. At that time, I think we didn't talk it all over in common, nothing more than the bare statement as they explained to me; I didn't have an opportunity of examining anything."

It is clear that Mrs. Lockwood and her sister had no inheritable interest in the Weld County land, for the title was in McGowan under a patent from the government.

It is plain that these daughters, through Mrs. Lockwood, were attempting to secure title to both properties, under the plea that such was the desire of Mrs. McGowan before

her death; at a time when he was without knowledge as to the deed, in ignorance of legal forms, and when he was suffering from grief because of her death.

Mrs. Lockwood testified on the trial that sometime prior to her mother's death, the mother told her that she wanted the property to go to the sisters, but to the use of McGowan during his lifetime. But this in no sense negatives the fact that the deceased woman deliberately executed the deed at her own instigation, and delivered it to McGowan, with instruction to lock it up in his tool chest.

There is not a scintilla of testimony in the case to indicate that there was any condition placed upon the delivery of the deed or that such delivery was not intended to be present, absolute and final.

The testimony of Mrs. Lockwood and others is that Mrs. McGowan's mind was clear at all times mentioned. The fact that she had repeatedly expressed her intention to convey the property to her husband; caused the deed to be drawn and executed it properly, and at the time expressed her purpose to the notary; delivered it to her husband, saying at the time that she could not live; instructing him to lock it in his tool chest, to which he alone had the key, forces the irresistible and legitimate conclusion that it was intended as an absolute and present delivery to the grantee. The only question to be determined is whether or not there was a lawful delivery.

The court did not find any fact contrary to or in conflict with the above statement of the testimony. It is clear that the ruling of the court was in effect that the delivery of the deed under the circumstances was such as in law did not pass the title to the property.

After McGowan discovered that he had a deed for the property, he caused a letter to be written to Mrs. Lockwood, advising her of the fact, and proposing a compromise, to the effect that if the sisters would reconvey his Weld County land to him, he would agree to permit title to the house and lots to remain in them, subject to a life interest in him.

This correspondence is referred to frequently in the testimony, and seems to have continued, but resulted in a refusal by Mrs. Lockwood, and after a period of about three years the deed from his wife was recorded, and later this suit instituted.

We think that under the law in this jurisdiction as announced in the case of *Walker v. Green,* 23 Colo. App. 154, 128 Pac. 855, there was a lawful delivery of the deed in question, and that it constituted a valid conveyance. Gathered from this decision is the following statement of controlling legal principles:

"The question of delivery is one of intention, and the rule is that a delivery is complete when there is an intention manifested on the part of the grantor to make the instrument his deed. The doctrine seems to be settled beyond reasonable doubt, remarks Justice Atwater, 'that where a party executes and acknowledges a deed, and afterward, by acts or words, expresses a will that the same is for the use of the grantee, especially where the assent of the grantee appears to the transaction, it should be sufficient to convey the estate, although the deed remains in the hands of the grantor. The main thing which the law looks at is whether the grantor indicates his will that the instrument shall pass into the possession of the grantee, and if that will is manifest, then the conveyance enures as a valid grant, although, as above stated, it never comes into the hands of the grantee (p. 159). * * * The intent to convey is evidenced by the fact of making out and duly acknowledging a deed. The delivery may be evidenced by any act of the grantor by which the control or dominion or use of the deed is made available to the grantee."

When we consider the life relationship of the parties, there does not remain a reasonable doubt of the intention of Mrs. McGowan to convey absolutely the property to her husband. He was a carpenter, who industriously worked at his trade, turning over his earnings to the care of his wife. She was a tailor and apparently worked much at her

trade. They jointly earned, jointly saved, jointly invested their earnings in the purchase and building of their home. The record discloses an unusual degree of mutual confidence and devotion in and to each other. She having the title to the property in her own name, with full knowledge of approaching death, it was most natural that she should desire that this fruit of their joint toil, this property so long their habitation, and which he had so largely produced, should be his very own.

There is no question of creditors' claims, and no other questions of possible wrong. There was no burden imposed on the grantee in this case, and therefore his acceptance must be presumed.

The general rule in that regard is stated in 8 R. C. L. 1000 to be:

"As a general rule, made statutory in some states, acceptance is *prima facie* presumed where a deed or instrument purporting to convey valuable property, and creating no obligation or burden to be assumed by the grantee, is delivered to the manual possession of the grantee himself, or to a third person for such grantee's benefit; and though there are cases to the contrary, some of the expressions in the opinions are too absolute, for it is not to be presumed that every one under all circumstances will accept whatever gift is offered him; still these expressions are to be read in the light of the case which the judge had under discussion, and it has been suggested that there are few, if any, authorities which refuse altogether to indulge the presumption where the deed is wholly beneficial and imposes no burdens upon the grantee."

And further by the same authority, as to the rule of relationship to date of deposit or delivery:

"There are two theories with reference to such a delivery and acceptance, which, though not always clearly differentiated by the courts, seem entirely distinct. One is that the actual acceptance by the grantee, even if not made until after the grantor's death, relates back to the time of the

delivery to the depositary. The other is that immediately upon the delivery to the depositary of a deed, wholly beneficial to the grantee, a presumption of acceptance arises, even if he does not know of the existence of the deed. On strict principle it seems that neither theory is entirely free from objection. It is not always possible to determine which the court had in mind, but, for the most part, courts disregard technical distinctions and consider a deed as taking effect subject to the rights of persons superior to those of the grantor, which intervened between the delivery of the deed to the depositary and its actual acceptance by the grantee, though a few cases accept the logical consequences of the theory of presumed acceptance, and hold that the deed is superior to all intervening rights." 8 R. C. L. 1017.

It was expressly held in *Criswell v. Criswell*, 138 Ia. 607, 116 N. W. 713, that:

"The question of delivery of a deed is chiefly one of intent to be gathered from the circumstances surrounding the transaction, as well as from direct proof; and where a deed is handed to a third person under circumstances indicating a desire and intention of the grantor that upon his death it shall be delivered to the grantee named therein, it constitutes a delivery, although there was no express direction so to do; and it is immaterial that neither such third person nor the grantee knew of the character or existence of the instrument until after its actual delivery to the grantee."

In sustaining these views may be cited *Matheson v. Matheson*, 139 Iowa 511, 117 N. W. 755, 18 L. R. A. (N. S.) 1167; *Riegel v. Riegel*, 243 Ill. 626, 90 N. E. 1108; *In re Bell's Estate*, 150 Iowa 725, 130 N. W. 798; *Clark v. Creswell*, 112 Md. 339, 76 Atl. 579, 21 Ann. Cas. 338; *In re Braley's Estate*, 85 Vt. 351, 82 Atl. 5; *Buchanan v. Clark*, 164 N. C. 56, 80 S. E. 424; *Baker v. Hall*, 214 Ill. 364, 73 N. E. 351; *Miles v. Robertson*, 258 Mo. 717, 167 S. W. 1000.

In *Brinker v. Malloy*, 53 Colo. 186, 125 Pac. 507, it was said:

"The very essence of the delivery of a deed is the intention of the parties, which is to be gathered from their con.duct and all the surrounding circumstances."

The rule is stated by Professor Brewster as follows:

"It has accordingly been held, in many cases, that when a grantor has parted with control of a deed, the delivery is complete and no acceptance by the grantee need be shown, nor even his knowledge of the deed, for its acceptance by him will be conclusively presumed until his express dissent is shown." Brewster on Conveyancing, p. 367.

*Marvin v. Thompson,* 23 Colo. 180, 46 Pac. 673; *Childers v. Baird,* 59 Colo. 382, 148 Pac. 854, and *Rittmaster v. Brisbane,* 19 Colo. 371, 35 Pac. 736, support the views herein expressed.

The judgment is reversed, with instruction to enter judgment in favor of the plaintiff in accord with the prayer of the complaint.

Hill, C. J., and Garrigues, J., concur.

Decided June 3, A. D. 1918. Rehearing denied December 2, A. D. 1918.