No. 11,021.

DOSS *v.* DOSS.

Decided May 4, 1925.

Action to cancel deed.   Judgment for plaintiff.

*Affirmed.*

On Application for Supersedeas.

1.  DEED—*Delivery.*  If there is no delivery, a deed is void.

2.  APPEAL AND ERROR—*Deed—Delivery.*  It is within the province of the lower court to find as a question of fact, or mixed law and fact, whether there was a delivery of a deed.

3.  DEED—*Delivery—Intention.*  The question of the delivery of a deed must depend upon the circumstances of each particular case, and is one of intention.

4.  APPEAL AND ERROR—*Findings.*  In an action to cancel a deed to the wife of grantor, evidence reviewed and a finding of no delivery, sustained.

*Error to the District Court of Adams County, Hon. George F. Dunklee, Judge.*

Mr. F. D. TAGGART, for plaintiff in error.

Mr. TOM HERRINGTON, Mr. VICTOR ARTHUR MILLER, for defendant in error.

*Department Three.*

MR. JUSTICE SHEAFOR delivered the opinion of the court.

SUIT brought by defendant in error against plaintiff in error to set aside and cancel a deed executed by W. F. Doss to plaintiff in error.   Trial to the court without a jury, re-

sulting in findings and judgment for defendant in error. Plaintiff in error brings the case here and applies for a supersedeas. The parties will be referred to as in the court below.

The plaintiff alleged, among other things, as grounds for a cancellation of the deed, that the deed was never delivered to the grantee, but that the grantor had access thereto at all times and control of the same, and that the deed was executed while the grantor was under the influence of the grantee, his will having been overcome by the importunities and commands of the latter.

As to the question of the delivery of the deed, the trial court found, inter alia, that William F. Doss on and prior to the 2nd day of October, 1922, was the owner in fee simple, and in possession, of the real estate described in the complaint; that on that day he made, signed, and acknowledged a deed to the same wherein he was grantor, and defendant, Mary Anastasia Doss, his wife, was the grantee; that on December 11, 1922, William F. Doss died intestate, leaving surviving him as his sole heirs the plaintiff, Leo Leonard Doss, and the defendant, Mary Anastasia Doss; that William F. Doss, the grantor in the deed, did not deliver the deed to the defendant; that at all times after the execution of the deed it was in the possession, and under the control, of the grantor; that after the death of the grantor the deed was turned over to the defendant by Ed Doss, a brother of the grantor.

The evidence which formed the basis for these findings is in substance that W. F. Doss had his attorney make a deed to defendant for the property, and that she seemed to be dissatisfied, saying that the deed was not good; that he said to defendant, "Mary, let's have Ed take that deed and see if he can have somebody look it up to see if it is made the way we want it;" that he then said to her, "Mary, get the deed, it is in the living room, it is there in a book, or under a book;" that he told her where the deed was, and Mary went and got it and brought it; that he said, "Yes, let Ed read it and look at it and see what he thinks of it;"

that he gave the deed to his brother Ed Doss to take to
Denver to see if it was all right; that Ed Doss asked his
brother if he found the deed all right whether he should
have it recorded, to which he answered "No, I have three
or four trades on that I would like to make." The above
conversation relating to the deed occurred about November
25, 1922. Ed Doss did not see his brother, the grantor in
the deed, again until on the 11th day of December follow-
ing. Ed Doss had retained possession of the deed from
the time he received it in November, and still had it when
he saw his brother on the 11th day of December. On the
latter date, in speaking of this property to his brother Ed,
he said "If I cannot trade it all off I can trade a part of it
off and maybe I can get off the ranch this winter." Ed
Doss testified that he had the deed until the next day after
the funeral of William Doss; that he then gave it to the
defendant, and she put it on record. He further testified
that he knew of his own knowledge that his brother had
negotiations on for the trade of various parcels of the land
described in the deed, both before and after October 2,
1922, the date of the deed; that he had several negotia-
tions on in Denver and one at Fort Morgan; that William
did not tell Ed Doss what disposition to make of the deed
other than to take it to Denver and have it examined and
report to him what condition the deed was in. He also
testified that when he left his brother William's house on
the 11th of December he had all of their deeds with him;
that he got all of the deeds to make them up into parcels
as desired by his brother William. Then the witness was
asked: "Q. I am asking you if these facts stated in this
complaint are true as I read to you, that it was given to
you under the express intention and commission of Mr.
Doss that the said William F. Doss was at all times thence-
forward to have access thereto and control thereof, both as
to the deed and its contents? A. Yes, sir. Q. That is
true? A. Yes, sir. Q. But, in spite of the manner in
which it was delivered to you, you gave it to Mrs. Doss?
A. Well, I gave it to her or the banker, all being present.

Q. In other words, you violated a trust which your brother imposed in you, didn't you? A. It wasn't mine; I had to do something with it."

It also appears from the testimony that the grantor spent much of his time in the month of October in negotiating the trades referred to.

A. B. Doss, another brother of the grantor, testified that he knew of deals that his brother made after the date of the deed, and said "the last time was December 10th, on Sunday, he was at my house and visited and spent the evening, and talked of the numerous deals he had on, or trades, the following week * * * he had three or four on, one in Fort Morgan. I cannot recall the party's name; and also one for the Holden Apartments in Denver at 18th and California. Q. What parcels did these concern in his property here? A. All. He was considering trading all of them. A. Did it concern the West half of Section 10? A. Yes, sir. Q. Did it include the whole thing? A. The whole thing."

Concerning possession of the premises described in the deed, the testimony tended to show that the grantor and defendant lived there after October, 1922, until the death of Mr. Doss; that after October 2, Mr. W. F. Doss retained possession of the property; that it was pasture land, and that his cattle were run on it; that he run his cattle on the entire place; that the defendant also had some cattle there. It appeared further from the testimony that there were probably 2200 acres of the land, and that the grantor run on the premises from 250 to 300 head of cattle in the fall; that the grantor disced some of the land and put it in fall grain. It appears further from the testimony that all of the premises except the west half of section 10 had been mortgaged by the grantor, the mortgage foreclosed, the premises sold and never redeemed.

It is true that defendant testified, and there was other evidence tending to show, that the deed had been actually delivered to her and had remained in her possession until it was given to Ed Doss to be examined, and there was evi-

dence also tending to show that W. F. Doss said he intended to deed defendant a piece of land, or the home, so that she would have a place to live if she survived him. There appears no evidence that there was any intention that the deed should be, or was, delivered to take effect upon the death of the grantor.

The question then is: Was there sufficient evidence to sustain the findings of fact and to justify the court's conclusion that there was no delivery of the deed? If there was no delivery, the deed is void. *Rittmaster v. Brisbane,* 19 Colo. 371, 383, 35 Pac. 736; *Childers v. Baird,* 59 Colo. 382, 386, 148 Pac. 854.

It has been held that "a deed does not become operative until it is delivered with the intent that it shall become effective as a conveyance. If the grantor indicates his will that the deed should pass into the possession of the grantee then the conveyance inures as a valid grant, although * * * the deed never comes into the hands of the grantee."

The rule established in this jurisdiction is that it is "within the province of the lower court to find, as a question of fact, or mixed law and fact, whether there was a delivery of the deed." It has also been held that the question of delivery must depend upon the circumstances of each particular case, and is one of intention. *Walker v. Green,* 23 Colo. App. 154, 128 Pac. 855; *Brinker v. Malloy,* 53 Colo. 186, 125 Pac. 507; *Marvin v. Stimpson,* 23 Colo. 174, 180, 46 Pac. 673; *McGowan v. Lockwood,* 65 Colo. 264, 271, 272, 176 Pac. 298; *Durango Trust Co. v. Campbell,* 69 Colo. 49, 52, 168 Pac. 1174; *Phelps v. Phelps,* 71 Colo. 343, 206 Pac. 787; 18 C. J. pp. 196-200, Secs. 94-96.

In *Marvin v. Stimpson, supra,* it was held that the generally accepted rule is "that when * * * the intention of the grantor to invest the grantee with the immediate ownership of the property, and of the grantee to accept the same, is manifest, such intent and purpose is sufficient to constitute a constructive delivery of the deed, even though

the actual custody thereof remained in the grantor or some third person."

In the instant case we think the evidence was sufficient to sustain the findings and judgment of the court, and we cannot disturb them. *Walker v. Green, supra,* 161.

It appears quite plainly that the grantor did not intend to make a present delivery of the deed to his wife as he was endeavoring at all times, both before and after its execution, to negotiate deals whereby he could dispose of all the property described in the deed. The evidence was sufficient to justify the finding that the deed had remained in his possession a portion of the time after its execution and the remainder of the time in the possession of Ed Doss until after the death and burial of the grantor, when it was turned over by Ed Doss to the defendant; that the grantor remained in possession of the premises after the execution of the deed the same as before, and pastured several hundred head of cattle on the land.

Perhaps we should notice in this connection that there was evidence that defendant had said "I have everything fixed now. Will deeded everything to me leaving nothing to Leonard." And also evidence that the grantor, at the time of the making of the deed, said to his attorney who had prepared it, "He stated that he wanted to make a deed to Mary, as he expressed it, so that in case anything should happen to him that she would be protected."

It is conceded that the question of delivery is the vital one in this case, and in view of the conclusion we have reached that there was no delivery of the deed, either manual or constructive, the other matters discussed by counsel become immaterial and need no consideration.

The record disclosing no reversible error, the application for supersedeas is denied and the judgment affirmed.

Mr. Chief Justice Allen and Mr. Justice Whitford, sitting for Mr. Justice Campbell, concur.