## FISK, PLAINTIFF IN ERROR, v. CATHCART ET AL., DEFENDANT IN ERROR.

1. COVENANTS.
A covenant against incumbrances is one *in præsenti,* and is broken at the time of the execution of the deed, if there be an outstanding valid lien which the grantee is compelled to discharge.

2. SAME.
When an estate is conveyed subject to an incumbrance, the grantee takes an estate which draws to itself the right to enforce all covenants contained in the deed whereby it was transferred, or any other covenants contained in antecedent conveyances which run with the land.

3. SAME.
Where a conveyance is made subject to an incumbrance but contains, with this exception, general covenants against incumbrances, and the estate passed is subsequently extinguished by proceedings under the excepted incumbrance, a remote grantee cannot, after extinguishment of his estate, maintain an action upon a breach of the covenant against incumbrances, notwithstanding he was compelled to expend money to remove a lien upon the premises while he held them.

*Error to the District Court of Arapahoe County.*

Messrs. ROGERS, SHAFROTH & WALLING, for plaintiff in error.

Mr. JOHN P. BROCKWAY, for defendant in error.

BISSELL, P. J., delivered the opinion of the court.

This action is based upon a covenant contained in a deed under which Fisk, the plaintiff in error, claims to have acquired the title to certain real property situate in the city of Denver.

In 1883, Edgar D. Parker owned lands, and on the 10th day of January of that year executed his deed of trust to John Sidney Brown, as trustee, to secure the payment of thirteen thousand ($13,000) dollars to Elizabeth S. Iliff, within three years of the date of the loan. The importance of these facts in determining Fisk's right to maintain the action of covenant which he brought, will become apparent when the subsequent title is deraigned. After Parker made this deed, he sold his equity to Cathcart and Reser, and on the 5th of March, 1883, executed to them a deed which contained the general covenants of seizin, against incumbrances, of quiet enjoyment and general warranty. The last grantees deeded to Montgomery, who transferred to Reser, from whom the title passed to Lina Beecher, and from him to Fisk. The last deed from Beecher to Fisk was dated June 3, 1885. All these deeds contained the same covenants which were expressed in the original transfer from Parker to Cathcart and Reser. While the title stood in Cathcart and Reser, it became subject to the taxes of 1884, which were not paid, and in May, 1885, the property was sold by the treasurer of Arapahoe county. This incumbrance or lien for taxes accrued during the time that the last named grantors held the title, but the sale was made during the time that the title stood in Beecher, and prior to the conveyance to Fisk. This is stated more for the purposes of illustrating the contention of the appellants than because of its exact bearing upon the legal proposition involved. All of these deeds which have been mentioned, except the one from Parker to John Sidney Brown, which was a trust deed, were made subject to that incumbrance and to all of its terms and provisions. One of the conditions of the trust deed obligated the grantor to pay the

taxes which might be levied against the property, authorized the trustee to apply the proceeds of any sale that might be had under it to the liquidation of the general incumbrance, and of any liens that might be legitimately tacked on to it, under its stipulations.

In December, 1885, Parker and his subsequent grantees defaulted in the conditions of the deed of trust, and the trustee proceeded to foreclose it. The regularity of his proceedings are not questioned, and they culminated in a deed from him to Elizabeth Warren. The title thus vested in Mrs. Warren passed by mesne conveyances to one Brummagen, and from him to Fisk by a deed which was dated the 5th of April, 1887. About a month afterwards, Fisk redeemed the premises from the tax sale, and expended in doing it $595.22, for which he brings this suit against Cathcart and Reser on their covenant of warranty contained, as heretofore stated, in their deed to Montgomery, of June 14, 1884. Fisk did not recover.

The view which the court takes of the situation of the title removes the necessity to discuss many intricate and difficult questions on which learned authors and eminent judges have bestowed much labor. In reality the action assumes the form of what, under the ancient practice, would be a suit on the covenant against incumbrances brought by a subsequent grantee who had sustained damage for the amount which he was compelled to pay to relieve the property of the incumbrance. All agree that the covenant against incumbrances is one *in præsenti* and broken at the time of the execution of the deed, if then there be outstanding a valid lien which the grantee is compelled to discharge. The authorities are not absolutely uniform as to the measure of damages in a case of this description, nor entirely harmonious on the inquiry whether if a more remote grantee be compelled to discharge the lien he may not recover therefor, notwithstanding nominal damages may have been antecedently recovered by his or some prior grantor, who is entitled to maintain the suit because the breach happened at the time he took title. It is

needless to do more than intimate these rules. It was well settled, and probably remains so, that when an estate is conveyed subject to incumbrance, what the grantee takes, which is ordinarily termed an equity of redemption, is in reality and in legal substance an estate which draws to itself the right to enforce all covenants contained in the deed whereby it was transferred, or any other covenants contained in antecedent conveyances which run with the land, and to which by virtue of the transfer the grantee succeeds in right. And it has been held that this succession to the right to enforce the covenants which run with the land, would go to a subsequent holder of a title, even though it might have come to him by operation of law, as in the case of sales under legal process properly running against the transferred equity. Rawle on Covenants for Title (4th ed.), pages 262, 284, 290, 334, *et seq.* *White v. Whitney,* 3 Metc. 81; *Moore v. Merrill,* 17 N. H. 75; *Thayer v. Clemence,* 22 Pick. 490; *Richard v. Bent,* 59 Ill. 38.

But none of these principles seem to be applicable or determinative of the present controversy. What passed by the deeds from Parker to his subsequent grantees, which is recognized by all the authorities as an estate, but is for the purposes of this decision more aptly called an equity of redemption, undoubtedly determined and ceased to have a legal or equitable existence upon the completion of the sale under the trust deed when the title was transferred to Mrs. Warren. The original fee was in Parker, and the subsequent estate which he granted was undoubtedly limited and controlled by the terms of the transfer to Brown, and liable to be defeated by the complete conveyance of the title, which the trustee was authorized to make in case Parker or any subsequent grantees should default in the performance of the conditions and limitations contained in that deed. It will be remembered that all the later deeds from Cathcart and Reser to Fisk were subject to that incumbrance and to the limitations of the deed to Brown, and all that the parties can be said to have taken was an estate which would be defeasible upon the

nonperformance of the conditions contained in the trust deed, and the execution of its provisions by the trustee named in it. It therefore becomes plain that when the trustee exercised his functions, sold the property, and deeded it to Mrs. Warren, she took the original fee, which was in her relieved of any subsequently accruing burdens; and the equity of redemption which had passed to his grantees vested in her, not by the operation of those conveyances, but by the exercise of the trust powers contained in the original instrument of trust, and the whole estate became vested in her. This resulted in extinguishing the equity of redemption, and is undoubtedly the exact legal equivalent of the foreclosure of a mortgage, whereby the equities of subsequent grantees are foreclosed and their rights thereby lost. It is doubtless true that this title became vested in Fisk, but because he became the subsequent owner of the property it did not revive in him the right to enforce conveyances which only ran with a title which was as to him entirely destroyed by the foreclosure of the trust deed from which his subsequent title springs. Under these circumstances, there is no privity between him as a grantee from Beecher, and the prior grantors subsequent to Parker, which entitles him to maintain his suit upon his covenant.

The conditions and limitations contained in the trust deed are equally conclusive upon his rights. Parker was obligated by the terms of his grant to satisfy liens of this description, and he authorized the trustee, Brown, to apply the proceeds of the sale in liquidation of the claims. The interest in the title which Fisk acquired through the deeds from Brown to Mrs. Warren, and from her to Brummagen and thence to him, was so far as the record discloses unprotected by any antecedent covenants which he had the right to enforce, and his only remedy, if any, would be to compel the proper application of the proceeds of the sale to the liquidation of whatever legitimate claims there might be on the fund, and to resort to Parker, if he had the legal right by the terms of the instrument, and compel him to perform his undertaking with respect to

these taxes.   Evidently he is without right to maintain the
action of covenant against these remote grantors to compel
the liquidation of this lien.

The judgment of the court below accords with the law as
herein declared, and it will accordingly be affirmed.

*Affirmed.*