No. 13,038.

FLEMING ET AL. *v.* MCFERSON, BANK COMMISSIONER.
(28 P. [2d] 1013)

Decided November 6, 1933.   Rehearing denied January 22, 1934.

2

Messrs. BENEDICT & PHELPS, for plaintiffs in error.

Messrs. VAN CISE & ROBINSON, Mr. J. E. ROBINSON, for defendant in error.

*En Banc.*

MR. JUSTICE BUTLER delivered the opinion of the court.

ON December 29, 1930, Grant McFerson, as state bank commissioner, was in possession of the property and assets of the Farmers State Bank of Brighton, for the purpose of liquidation on behalf of the creditors, and Wellington J. Campbell was the owner of 13 shares of the bank stock. At that time the record title to three parcels of land, referred to as parcels 1, 2 and 3, stood in Campbell, but the purchase price had been paid by Calvin Fleming, who caused title to vest in Campbell for convenience only. It is stipulated that a resulting trust

arose in favor of Fleming. There was nothing of record showing that he had any interest in the property. Acting pursuant to section 2696, Compiled Laws, as amended by Session Laws of 1923, c. 67, sec. 1, p. 185, McFerson, on the date given above, without any knowledge or notice of Fleming's secret equity, filed in the office of the clerk and recorder of Denver a statement claiming a lien on account of Campbell's liability as stockholder. Thereafter Campbell conveyed the property to Fleming.

On May 28, 1931, Fleming sued McFerson to remove from the former's title to the property the cloud created by the filing of that statement. McFerson filed an answer, and in a counterclaim sought a foreclosure of the lien. By agreement, a bond was substituted for the property, which was thereupon released from the lien. It was stipulated that in case the lien should finally be adjudged to be valid and enforceable against the property, or any part thereeof, judgment for the amount thereof should be rendered against the principal, Fleming, and the surety, Union Indemnity Company of New Orleans.

The court found the issues in favor of Fleming as to parcel 3, and decreed that the cloud upon his title thereto be removed. As to parcels 1 and 2, the court found the issues in favor of McFerson, and rendered judgment for $2,808 against Fleming and the Union Company, who are here seeking a reversal of the judgment against them.

■■ 1. It is said that as the act of 1923, supra, gives the lien upon real estate "of" the stockholder, the property in question was not subject to the lien because it did not belong to, was not the property of, the stockholder, Campbell, for he held merely the naked legal title in trust for Fleming, who alone was the beneficial owner.

A contention somewhat similar to that has been made in cases of execution and judgment liens. Section 5898, Compiled Laws, provides that "the judgment shall become a lien upon all the real property of such judgment debtor," and that "all and singular the * * * real

estate of every person against whom any judgment shall be obtained in any court of record" may be sold on execution. Where a judgment debtor having the record title to real property conveys it to another he parts with his title and thereafter does not have even a naked legal title; and yet if before the recording of the deed the judgment creditor, without notice of the conveyance, files a transcript of the judgment, the lien of his judgment is superior to the rights of the grantee in the deed. In *Wedman v. Carpenter,* 65 Colo. 63, 65, 173 Pac. 57, we said: "It is settled in this state that the lien of a judgment creditor stands upon the precise footing as that of an innocent purchaser or encumbrancer in good faith, subject to the same tests as to good faith and regularity generally. * * * It is well settled in this jurisdiction that the rights acquired by *bona fide* purchaser of real estate, without notice of an unrecorded deed, are not measured by the actual interest of the seller in the land, but rather by his apparent interest." And see *Donahue v. Kohler-McLister Paint Co.,* 81 Colo. 244, 254 Pac. 989. The same rule applies as between a judgment and a resulting trust. In *Western Chemical Mfg. Co. v. McCaffrey,* 47 Colo. 397, 107 Pac. 1081, we said: "Authorities are cited holding that a judgment lien does not prevail over prior equitable claims, and that it attaches to the actual, rather than to the apparent, interest of the judgment debtor. But these authorities are not from the appellate courts of this state, and in this jurisdiction a contrary doctrine prevails. *McMurtrie v. Biddell,* 9 Colo. 497; *Bank v. Campbell,* [Campbell v. Bank] 22 Colo. 177. No resulting trust nor unrecorded deed can operate to defeat the right of a judgment creditor who has caused his judgment to become a lien by proper record, unless the creditor had notice of the trust or unrecorded deed at the time his lien attached." And in this respect an execution creditor stands in the same favorable position as a judgment creditor. *McMurtrie v. Biddell,* 9 Colo. 497,

13 Pac. 181; *Hallett v. Alexander*, 50 Colo. 37, 114 Pac. 490. There is no substantial reason why the same rule should not be applied in favor of a bank commissioner who files a statement claiming a statutory lien. The act of 1923, supra, provides that ''from the date of filing of such statement the same shall be a lien upon any real estate of such shareholder located in such county.'' McFerson is a lienor. A lien is an encumbrance. *Fisk v. Cathcart*, 3 Colo. App. 374, 33 Pac. 1004. Lienors, and other encumbrancers, stand in the same position as purchasers.

2. As we have seen, when he filed the statement, thereby acquiring a lien, McFerson had no knowledge or notice of Fleming's secret equity. It is said, however, that at the time of the filing of the lien statement Fleming was in possession of parcel 2, and that his possession was notice of his interest therein. But at the time of the filing of the lien statement, parcel 2 was vacant and unoccupied unless, as contended by Fleming, he caused material to be delivered there thirteen days before such filing, preparatory to the erection of a house. There is some uncertainty whether or not that contention is supported by the stipulation. Be that as it may, no such contention is made as to parcel 1. As the lien was adjudged to be valid and enforceable as against that parcel, if we sustained the present contention as to parcel 2, it would not affect the result, for the stipulation provides that judgment should be rendered against the principal and the surety on the bond if a lien should finally be adjudged valid and enforceable against any part of the property.

3. Another point urged by counsel for Fleming is that the act of 1923, supra, as we construe it, deprives their client of his property without the due process of law guaranteed by the federal and state Constitutions, and for that reason is void. The specific objections are that the act attempts to create a lien upon the mere filing of the lien statement without any preliminary notice or hear-

ing, and that the act provides no steps for foreclosure of the lien or for any judicial determination of the rights of the parties.

We cannot sustain the contention. Of course, no judgment foreclosing the lien could be rendered without notice to the owner and affording him an opportunity to be heard; but the due process clause does not require notice or hearing prior to the attaching of the lien. Section 115, Code of Civil Procedure, provides for the levy of an attachment upon the real estate of the debtor without any preliminary notice or hearing. Chapter 5, Id., relating to replevin, provides for the seizure of personal property before judgment and without any preliminary hearing. A principal contractor may file a notice of lien upon the property of the owner without any preliminary notice or hearing. C. L. §6450. An attorney's lien attaches without any preliminary hearing. C. L. §§6010, 6011. It never has been supposed that those provisions contravene the due process clause of the Constitution. In 8 R. C. L. pp. 451 and 452, the law is stated in these words: "Although * * * it is the general rule that everyone is entitled to a hearing as an essential part of due process of law, a statute is not unconstitutional merely because it authorizes a ministerial act by which possession of property is taken before the right to it has been judicially determined. This is done in cases of attachment and replevin, without objection and is a matter in the discretion of the legislative power in creating remedies. A party must not be deprived of his property without a judicial hearing, but the stage of proceedings at which that hearing shall take place, and the manner in which the cause of a party shall be brought before the judicial tribunal, provided it is not an unreasonably inconvenient and embarrassing one, are with the legislative power. Due process of law is afforded litigants if they have an opportunity to be heard at any time before final judgment is entered, but a hearing, or an opportunity to be heard,

prior to judgment, is absolutely essential." In *Wilson v. Standefer*, 184 U. S. 399, 22 Sup. Ct. 384, the court said: "It is scarcely necessary to say that this court, when asked to revise proceedings in state courts, have always held that due process of law is afforded litigants if they have an opportunity to be heard at any time before final judgment is entered." The Banking Act of Georgia provides that the superintendent of banks may give notice to stockholders of an assessment; that if any stockholder notified shall neglect to pay the assessment the superintendent shall issue an execution for the amount, to be enforced like other executions, "provided, however, that any stockholder shall have the right by affidavit of illegality, as in cases of affidavits of illegality to other executions, to contest his liability for such assessment and the amount and necessity thereof"; that the execution and affidavit shall be returned to a court for trial; and that the execution shall be "a lien on all property of the defendant subject to levy and sale for the amount which shall be adjudged to be due thereon from the date of the issuance thereof by the superintendent." It was contended by certain stockholders, as appears from the brief, 72 L. Ed. 768, that the act deprived them of due process of law, in that, "without any trial or hearing or process of law of any kind, the superintendent of banks is given a lien upon all of their property, and authorized to proceed further and levy upon and sell any of their real estate, without any notice to them, or any judicial proceeding or process of any kind." The court held that the act was not open to that objection, saying: "The fact that the execution is issued in the first instance by an agent of the state but not from a court, followed as it is by personal notice and a right to take the case into court, is a familiar method in Georgia, and is open to no objection." *Coffin Bros. & Co. v. Bennett*, 277 U. S. 29, 48 Sup. Ct. 422, 72 L. Ed. 768. A statute of North Carolina provides that upon the failure of a bank the corporation commis-

sion of the state, after notice, may levy an assessment to enforce the statutory liability of the stockholders, and file in the office of the clerk of the Superior Court a copy of the levy; that it shall be recorded and indexed as a judgment, and shall have the force and effect of a judgment; that upon the failure of a stockholder to pay the assessment, an execution may issue; and that the stockholder may appeal to the Superior Court from the levy of the assessment. In *Corporation Commission v. Murphey,* 197 N. C. 42, 147 S. E. 667, it was held that the statute did not offend against the due process clause. The decision was affirmed in *Murphey v. Corporation Commission,* 280 U. S. 534, 50 Sup. Ct. 161.

The fact that the act does not expressly provide for foreclosure or other judicial proceeding does not render it void. The district court has jurisdiction in all suits to foreclose liens, including the lien involved in this proceeding. The act does not attempt to give the bank commissioner power to enforce the lien by selling the property, or make his act conclusive of the ownership of the stock or of the real estate; nor does it attempt to forbid resort to a court, which alone has jurisdiction to determine such matters after notice to the stockholder and after he has been afforded an opportunity to be heard. Our Public Utilities Act (C. L. §2961) purports to give to the person aggrieved by a decision of the public utilities commission the right to apply directly to this court for a writ of review, and provides that no other court shall have jurisdiction to review any order or decision of the commission. In *Clark v. Public Utilities Commission,* 78 Colo. 48, 239 Pac. 20, we held that the provision seeking to impose such original jurisdiction upon this court was unconstitutional and void. And in *Greeley Transportation Co. v. People,* 79 Colo. 307, 245 Pac. 720, we held that the provision attempting to deprive district courts of jurisdiction was unconstitutional and void. That left the act without any provision for a review by a

court, but we held that such omission did not render the whole act void, as the district court, under the powers conferred upon it by the Constitution, has jurisdiction to review a decision of the commission. In *Louisville & Nashville Railroad Co. v. Railroad Commission*, 231 U. S. 298, 310, 34 Sup. Ct. 48, the court said: "The order is further attacked upon the ground that the statute under which it was made operates to deprive the carrier of its property without due process of law and to deny to it the equal protection of the laws contrary to the Fourteenth Amendment. It is insisted that the failure to provide for an appeal to any court from the final order of the Commission, or for a judicial review of the reasonableness of the prescribed rates before they become effective, makes the statute void. But the statute does not deny to the carrier the right of access to the courts for the purpose of determining any matter which would be the appropriate subject of judicial inquiry." The court upheld the statute.

We conclude that the judgment of the district court is right.

It is affirmed.

Mr. Justice Hilliard and Mr. Justice Bouck dissent.