No. 21955.

SKY HARBOR, INC., A COLORADO CORPORATION; THE COLO-
RADO SPRINGS CHAMBER OF COMMERCE, A NON-PROFIT
ORGANIZATION ORGANIZED UNDER THE LAWS OF THE STATE
OF COLORADO, ET AL *v.* R. S. JENNER; ELISABETH JENNER,
ALSO KNOWN AS ELIZABETH JENNER.
(435 P.2d 894)

Decided January 8, 1968.

EUGENE O. PERKINS, for plaintiffs in error.

ROBERT W. JOHNSON, for defendants in error.

*In Department.*

Opinion by MR. JUSTICE SUTTON.

THIS controversy concerns a judgment lien asserted by the defendants in error, who were defendants in the trial court, in a vacated portion of Farragut Street located adjacent to

Lots 9 and 10 (except the West 50 feet thereof) and Lots 11, 12 and 13, Block 28, East End Addition to the City of Colorado Springs.

We shall refer to that portion of Farragut Street in Colorado Springs adjoining the lots on their eastern boundary as the "street" or "vacated street."

The record discloses that Everett Conover, the sole stockholder of plaintiff corporation, Sky Harbor, Inc., entered into an agreement in 1954 with R. C. Munro, Jr., concerning the acquisition and improvement of the lots prior to their transfer to Sky Harbor, Inc., one of the plaintiffs in error here. The two parties agreed in substance that Conover would purchase this property and place record title in Munro's name. Munro agreed to erect an apartment building on the site, and further agreed that upon its completion he would reconvey the improved property in exchange for other realty

owned by Conover. Pursuant to this agreement, the lots were purchased in October 1954 and the deed to Munro was duly recorded. Shortly thereafter, Munro suffered financial difficulties which prevented his construction of the apartment building. Conover then excused Munro from his performance and thereupon approached Harold A. White, a trust officer of the Exchange National Bank in Colorado Springs, and requested White to replace Munro as nominal owner of the lots. White consented and, on December 6, 1954, Conover had Munro execute a warranty deed conveying the lots to White.

Neither Conover nor Munro delivered the latter's deed to White and unfortunately it was not recorded at that time. Instead, Conover acquired and retained exclusive possession of the Munro deed, recording it at a later time as hereafter appears. Conover, however, directed White to execute a deed conveying the lots to Conover, but neither of the parties intended this instrument to have any legal effect unless Conover chose to record it for his protection.

At the trial Conover testified that he had delayed recording Munro's deed to White because he anticipated that a second developer might appear, and that Munro could execute a new conveyance of the property to that developer. The first deed then would not be used. When Conover failed to discover such a suitable alternate grantee, he recorded the Munro deed to White on December 29, 1955. Concurrently, Conover recorded a new warranty deed from White, obtained two days previously, conveying the lots to Sky Harbor.

The record also discloses that on July 11, 1955, which was prior to White's execution of the deed to Sky Harbor and while Munro's deed to White remained unrecorded, the Colorado Springs City Council enacted an ordinance vacating the portion of Farragut Street fronting the lots described in the Munro and White deeds. The effects of this vacating ordinance was to vest in whoever were the then owners of lots abutting Far-

ragut Street the title to the vacated roadway. C.R.S. '53, 120-1-12(3).

Sky Harbor's difficulties arise out of the fact that in December 1961, the Jenners, without any actual notice of Conover's interest in the lots or vacated street, obtained a $5,258.44 judgment against Munro which they duly recorded on January 2, 1962, in the El Paso County records. The judgment thereupon became a lien upon all real property which the judgment debtor, Munro, then owned or thereafter acquired. C.R.S. '53, 77-1-2.

Contending that White was the owner, the plaintiffs brought suit to quiet their title in the portion of the vacated street as against the Jenners' judgment lien. The trial court quieted title in the plaintiffs as to the vacated portion of the street subject, however, to the Jenners' judgment lien. From this judgment plaintiffs bring their writ of error asserting several grounds for reversal, none of which we find to be of merit for reasons hereinafter set forth.

The trial court's decree was based upon a finding that Munro's deed to White, although dated December 6, 1954, did not become legally effective until it was recorded which was after the enactment of the street vacation ordinance in July 1955.

Although it is urged by Sky Harbor that Munro constructively delivered his deed to White by physically giving it to Conover, such did not, under the facts in this case, constitute a valid delivery. This is so because the record discloses that both Munro and White were the controlled agents of Conover with the latter, according to the undisputed evidence, retaining complete control over both the deed and the property. It is clear that Conover at no time *intended* that Munro's deed to White would become operative as a transfer of title until Conover decided to record it. Therefore, title did not pass to White until December 1955. *Barnes v. Spangler,* 93 Colo. 254, 25 P.2d 732 (1933); *Griffith v.*

*Sands,* 84 Colo. 456, 271 P. 191 (1928); *McGowan v. Lockwood,* 65 Colo. 264, 176 P. 298 (1918). And see 23 Am. Jur. 2d, *Deeds,* §§ 89 and 96. The trial court, in our view, properly held that the effect of the vacation ordinance was to vest the disputed title in Munro, who was the owner at the time the street was vacated. See C.R.S. '53, 120-1-12.

 In *Wedman v. Carpenter,* 65 Colo. 63, 173 P. 57 (1918), this court stated:

"It is settled in this state that the lien of a judgment creditor stands upon the precise footing as that of an innocent purchaser or encumbrancer in good faith, subject to the same tests as to good faith and regularity generally. * * * It is well settled in this jurisdiction that the rights acquired by a bona fide purchaser of real estate, without notice of an unrecorded deed, are not measured by the actual interest of the seller in the land, but rather by his apparent interest. * * * *As between the negligent encumbrancer and an innocent purchaser for value, the former must suffer.* (Emphasis added.)

And in *Fleming v. McFerson,* 94 Colo. 1, 28 P.2d 1013 (1933), we stated:

"* * * *if before the recording of the deed the judgment creditor, without notice of the conveyance, files a transcript of the judgment, the lien of his judgment is superior to the rights of the grantee in the deed.* * * *

* * *

"In WESTERN CHEMICAL MFG. CO. VS. McCAFFREY, 47 Colo. 397, 107 P. 1081, (135 Am. St. Rep. 234) we said:

'*Authorities are cited holding that a judgment lien does not prevail over prior equitable claims, and that it attaches to the actual, rather than to the apparent, interest of the judgment debtor. But these authorities are not from the appellate courts of this state, and in this jurisdiction a contrary doctrine prevails. * * * No resulting trust nor unrecorded deed can operate to de-*

*feat the right of a judgment creditor who has caused his judgment to become a lien by proper record, unless the creditor had notice of the trust or unrecorded deed at the time his lien attached.'* \* \* \*." (Emphasis and part in parentheses added.)

Here the title to a portion of the vacated street rested in Munro when it became subject to the Jenners' recorded lien in January 1962. Needless to say, a correction deed, executed by Munro after January 1962, did not abolish the lien. And, since in legal effect there was no deed outstanding, the recording of the original deed to White *after* the street vacation served to convey only the lots and not a portion of the already vacated street. See *Morrissey v. Achziger,* 147 Colo. 510, 364 P.2d 187 (1961).

In conclusion, we comment on the plaintiffs' contention that the trial court erred in refusing to grant reformation of the original Munro deed and to include within it the vacated street. Plaintiff, however, misconceives the applicable law in this regard. In this jurisdiction reformation will not lie to the prejudice of a judgment creditor without notice who has a valid lien upon disputed property. *Wedman, supra.* And a creditor who, acting in good faith and without notice of equitable interests, acquires a lien under the statutes against the *apparent* interest of his judgment debtor, acquires a valid lien superior to a third party's equitable interests. *Fleming, supra,* and *Wedman, supra.*

The judgment is affirmed.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE HODGES and MR. JUSTICE KELLEY concur.