LEASE FINANCE INCORPORATED, a Colorado Corporation, Plaintiff-Appellee,

v.

Stephen J. COHEN and Carol Ann Cohen, Defendants-Appellants.

No. 83CA1286.

Colorado Court of Appeals, Div. II.

April 11, 1985.

Rehearing Denied May 9, 1985.

Certiorari Denied Sept. 9, 1985.

Lobus & Bradley, P.C., John A. Lobus, Lakewood, for plaintiff-appellee.

Silver and Hayes, P.C., Jack Silver, Peggy E. Stevens, Denver, for defendants-appellants.

VAN CISE, Judge.

Defendants, Stephen J. and Carol Ann Cohen, appeal from a judgment in favor of plaintiff, Lease Finance Incorporated (Lease Finance), holding that it may sell the Cohens' property in execution of its judgment. We affirm.

The stipulated facts are as set forth below. In 1977, Edward G. Clements acquired record title to certain land and improvements in Arapahoe County, Colorado. At that time, a deed of trust to the property for the benefit of Columbia Savings and Loan Association (Columbia) to secure a $119,200 note was signed and recorded. Between March 1978 and October 1979, five additional deeds of trust on the property were signed by Clements and recorded to secure indebtednesses aggregating $570,000.

In February 1980, Columbia commenced foreclosure proceedings. On April 2, the property was sold by the public trustee to Columbia as high bidder for the amount due on its first deed of trust note, and a certificate of purchase was issued to Columbia.

In January 1980, Lease Finance obtained a $104,826 judgment against Clements. On May 12, during the redemption period, a transcript of that judgment was recorded.

On April 27, 1980, the Cohens entered into a receipt and option contract to purchase the property from Clements. This contract was recorded June 4. Clements conveyed the property to the Cohens by deed dated June 10 and recorded June 11.

To purchase the property, the Cohens paid Clements $255,000, which was the then fair market value of the property. Of this purchase money, $125,035 was paid by Clements, as record owner, to the public trustee to redeem the property from the sale, and a certificate of redemption was issued to him and recorded June 11, a few minutes before the recording of Clements' deed to the Cohens. On June 21, $109,849 was paid for a release of the second deed of trust. The balance of the purchase mon-

ey was used to pay the premium on the title insurance policy, the recording fees, property taxes, water bills, and the broker's commission.

From the briefs, it appears that within the next few weeks the remaining deeds of trust were released as to the subject property. The amount paid therefor is not shown.

In April 1981, Lease Finance brought this action against the Cohens to have the court declare its judgment to be a lien against the property and order foreclosure and sale in execution. The Cohens counterclaimed, seeking a decree quieting title in them against Lease Finance's claimed judgment lien. They also cross-claimed against Clements for judgment for breach of warranty of title in the amount of Lease Finance's judgment if the court should determine it to be a valid lien on the property.

The trial court determined that the Cohens had constructive notice of the judgment from the date of the recording of the transcript thereof May 12, 1980, and that Lease Finance did not have notice of the Cohens' interest in the property prior to the recording of the receipt and option contract on June 4. It held that Clements' redemption, as record owner, preserved the lien of Lease Finance's judgment upon the subject property even if Clements "had no measurable equity in the real estate after redemption," and that the Cohens' title was subject to Lease Finance's judgment lien. The court entered judgment granting leave to Lease Finance to commence a sale in execution of its judgment and, in effect, held against the Cohens on their counterclaim.

Judgment was entered in the amount of the judgment lien against Clements on the Cohens' cross-claim. Clements has not appealed.

### I.

No issue having been raised as to these matters, we assume that Clements' redemption as record owner was procedurally correct and that the Cohens, as grantees of Clements, acquired the full fee title to the property, subject only to outstanding liens and encumbrances. The primary issue at trial was, and on appeal is, whether Lease Finance's judgment is a lien against the property after the conveyance to the Cohens.

The Cohens contend that a judgment lien may not be enforced against property in the hands of a subsequent purchaser when, as here, at the time the lien is recorded and at the time the property is conveyed, the prior outstanding encumbrances exceed in dollar value the fair market value of the property. They assert that the judgment debtor/grantor Clements had no measurable interest in the property at either time and, that, therefore, there was nothing against which Lease Finance's lien could attach. We do not agree.

Section 13–52–102(1), C.R.S., provides that from the time of recording the transcript, "the judgment shall become a lien upon all the real property of such judgment debtor ... owned by him...." Section 38–39–105, C.R.S. (1982 Repl.Vol. 16A) states that: "If redemption is made by the owner of the premises, it shall annul the sale and leave the premises subject to all liens which would have existed if no sale had been made, except the lien of the foreclosed mortgage which shall be discharged by the sale."

■ Therefore, when Clements, as record owner, redeemed from the foreclosure sale, all of the other liens and encumbrances, including the lien of this judgment, were reinstated with the same priorities. Since Lease Finance at the time of recording its judgment had no knowledge or constructive notice of the Cohens' equitable interest based on their receipt and option contract, its lien was and is superior to the Cohens' interest. *Sky Harbor, Inc. v. Jenner*, 164 Colo. 470, 435 P.2d 894 (1968). *See also Twogood v. Ocsay*, 97 Colo. 300, 49 P.2d 437 (1935), and *Wedman v. Carpenter*, 65 Colo. 63, 173 P. 57 (1918).

Contrary to the Cohens' contention, despite the magnitude of the encumbrances, Clements had fee simple title to the property. This title was in no way diminished or

modified by the prior encumbrances. The encumbrancers did not own an estate in the property; all they had was a lien right to have it sold and the proceeds applied on their debts. Lease Finance's judgment lien, like the other encumbrances, attached to Clements' interest, subject to the rights of all prior lien holders. *See Belnap v. Blain,* 575 P.2d 696 (Utah 1978).

As stated in *Kinney v. Vallentyne,* 15 Cal.3d 475, 124 Cal.Rptr. 897, 541 P.2d 537 (1975):

"[T]here is no lien unless and until the [transcript] of judgment is recorded. But precisely because of that recordation, the transferee takes with constructive notice of both the original amount of the judgment and the remaining life of the lien. He is presumed to know that if the value of the property at the time of transfer is insufficient to satisfy the judgment debt as it then stands, the creditor will be entitled to reach any future increase in the equity in the property occurring before he enforces the lien. Knowing this risk, during the life of the lien the transferee contributes to the equity in the property at his peril."

## II.

The Cohens also contend that, under the doctrine of equitable subrogation, they are subrogated to the rights and interests of encumbrancers prior and superior to Lease Finance's judgment lien and are, therefore, entitled to a discharge of that lien. This claim was not pleaded and was not called to the attention of, or considered by, the trial court until after judgment had been entered and they filed their new trial motion. Therefore, we are precluded from considering this issue on review. *Matthews v. Tri-County Water Conservancy District,* 200 Colo. 202, 613 P.2d 889 (1980); *First Lutheran Mission v. Department of Revenue,* 44 Colo.App. 417, 613 P.2d 351 (1980).

Judgment affirmed.

BERMAN and KELLY, JJ., concur.