BAP Appeal No. 21-2     Docket No. 35     Filed: 02/04/2022     Page: 1 of

FILED
U.S. Bankruptcy Appellate Panel
of the Tenth Circuit

February 4, 2022

Blaine F. Bates
Clerk

NOT FOR PUBLICATION[1]

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE TENTH CIRCUIT

_____

| | |
|---|---|
| IN RE THEOPHILUS SHAWN WILLIAMS, | BAP No. CO-21-002 |
| Debtor. | |
| _____ | Bankr. No. 18-11655 |
| | Adv. No. 18-1197 |
| EMESE WILLIAMS, | Chapter 13 |
| Plaintiff- Appellee, | |
| v. | |
| | OPINION |
| THEOPHILUS SHAWN WILLIAMS, | |
| Defendant-Appellant. | |

_____

Appeal from the United States Bankruptcy Court
for the District of Colorado

_____

Before **MICHAEL**, **PARKER**, and **THURMAN**, Bankruptcy Judges.

_____

**MICHAEL**, Bankruptcy Judge.

_____

---

[1] This unpublished opinion may be cited for its persuasive value, but is not precedential, except under the doctrines of law of the case, claim preclusion, and issue preclusion. 10th Cir. BAP L.R. 8026-6.

*Fear the divorce that threatens to outlast the marriage.*

In this appeal, the parties were married for over twelve years, and have been divorcing for more than five. The divorce court found that the wife had an interest in the marital property and ordered her to be paid for that interest when the house was sold. The husband found his way to the bankruptcy court and continued the fight there, where the parties litigated the dischargeability of his obligations to his estranged wife, and the ownership interest of the wife in the marital residence. The bankruptcy court agreed that the wife had an ownership interest in the marital residence and held the same to not be property of the estate. The bankruptcy court also held the obligations of the husband to the wife to be dischargeable in the bankruptcy case but declined to award the husband his fees incurred in defending the dischargeability action. The husband appeals, asking this court to find error and abuse of discretion by the bankruptcy court. We find neither, and affirm the decision of the bankruptcy court in all respects.

## I.     BACKGROUND

### A.     Dissolution-of-marriage action

Emese Williams and Theophilus Shawn Williams were previously married and were parties to a dissolution-of-marriage action filed in the District Court of Weld County, Colorado (the "State Court"). On or about July 11, 2016, Ms. Williams filed a notice of lis pendens in the records of the Weld County Clerk and Recorder, asserting an interest in the marital residence at 10167 Falcon Street, Firestone, Colorado (the "Property").[2] After the

---

[2] In the order appealed, the Bankruptcy Court noted that Ms. Williams's Exhibit 4 did not contain the actual recorded lis pendens filed in the real-property records, but instead contained a copy of a *Notice of Recordation of Lis Pendens* filed in the State Court

2

parties filed sworn financial statements, the State Court entered *Permanent Orders* in the proceeding on May 23, 2017 and September 12, 2017, both of which dealt with the parties' real and personal property, including the Property and Mr. Williams's 401(k) account with Halliburton.[3] Through the May 23, 2017 Permanent Orders, Ms. Williams and Mr. Williams agreed (and were ordered) to sell the Property, with each party to receive 50% of the net sale proceeds after payment of all costs related to the sale. The parties also agreed (and were ordered) that—starting in April 2017—Ms. Williams would receive $900 per month of rental income from the Property, which Mr. Williams had leased to a third party, and that the parties would equally divide the funds in Mr. Williams's 401(k) account, payable within thirty days of receipt of the proceeds from the sale of the Property.

The Property was not listed for sale by the deadline set in the May 23, 2017 Permanent Orders. Apparently because of that delay, in the September 12, 2017 Permanent Orders, the State Court awarded Ms. Williams the first $24,800 of the proceeds from the sale of the Property, with the remaining sale proceeds to be divided equally. With respect to the 401(k) account, the State Court found Mr. Williams withdrew all of the funds from the account and failed to pay Ms. Williams her one-half share, so the court reduced Ms. Williams's share of the 401(k) account to a judgment in the amount of $7,121.50, with 8%

---

dissolution-of-marriage action. The Notice of Recordation of Lis Pendens referenced a specific date and document number for the lis pendens recorded in the real-property records. According to the Bankruptcy Court, because Mr. Williams did not dispute that a lis pendens had been filed in the real-property records, the court accepted Exhibit 4 as evidence of the recorded document. Mr. Williams does not dispute on appeal that Ms. Williams recorded her lis pendens.

[3] Appellee's App. at 37, 42.

annual interest. With respect to the rental payments that Mr. Williams failed to turn over, the State Court likewise entered a judgment in Ms. Williams's favor in the amount of $4,500, with 8% annual interest. The September 12, 2017 Permanent Orders required Mr. Williams to satisfy those judgment debts, along with another judgment for past-due child support and maintenance payments, from the proceeds of the sale of the Property.

By January 2018, the Property still had not been sold. Ms. Williams filed a motion to enforce the Permanent Orders, and on March 3, 2018, the State Court entered an order (the "Enforcement Order")[4] appointing Kathryn Ruhl as the realtor and requiring the parties to sign a listing contract with Ruhl for the Property at a price determined by Ruhl, to cooperate with Ruhl, and to appear for a status conference on March 13, 2018.

### B.     Bankruptcy filing

On March 7, 2018, before the ordered status conference and before the Property was sold, Mr. Williams filed a chapter 13 bankruptcy petition in the United States Bankruptcy Court for the District of Colorado (the "Bankruptcy Court"). Mr. Williams disclosed the dissolution-of-marriage proceeding in his statement of financial affairs filed on the petition date.[5]

### C.     Adversary Proceeding and Mr. Williams's related appeal

On June 18, 2018, Ms. Williams filed a complaint[6] against Mr. Williams in the Bankruptcy Court, commencing an adversary proceeding (the "Adversary Proceeding")

---

[4] Appellee's App. at 46.

[5] Appellee's App. at 379, 381.

[6] Adv. No. 18-01197, ECF No. 1 (Bankr. D. Colo. June 18, 2018). This Opinion refers to certain documents filed in the Bankruptcy Court that were not included in the parties'

and asserting four claims for relief, including claims for (a) a determination of her ownership interest in the Property and its sale proceeds pursuant to 11 U.S.C. § 541(d), and a judgment imposing an equitable trust over the Property to carry out the terms of the orders entered by the State Court; (b) denial of Mr. Williams's discharge pursuant to 11 U.S.C. § 1325(a)(3), § 1325(a)(7), and § 1325(a)(4), or alternatively, dismissal of Mr. Williams's bankruptcy case pursuant to 11 U.S.C. § 1307(c)(11); (c) denial of Mr. Williams's discharge pursuant to 11 U.S.C. § 727; and (d) a determination that the amounts owed to her by Mr. Williams as determined by the State Court are nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) and § 523(a)(4).

The litigation spawned eighteen months of counterclaims, amended claims, and amended counterclaims. By the time of trial, the Bankruptcy Court had dismissed all but three claims between the parties.[7] In her first remaining claim,[8] Ms. Williams sought a

---

appendices. *See United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) (courts have "discretion to take judicial notice of publicly-filed records in [their own] court and certain other courts concerning matters that bear directly upon the disposition of the case at hand."); *In re Schupbach*, 607 Fed. App'x 831, 838 (10th Cir. May 19, 2015) (unpublished) (holding the appellate court may take judicial notice of the underlying bankruptcy docket).

[7] *See Order*, Adv. No. 18-01197, ECF No. 23 (Bankr. D. Colo. Feb. 14, 2019) (dismissing Ms. Williams's second and third claims for relief, which sought denial of discharge and dismissal of bankruptcy case); *Order*, Adv. No. 18-01197, ECF No. 62 (Bankr. D. Colo. Jan. 8, 2020), *in* Appellee's App. at 119 (dismissing nine of Mr. Williams's ten formal counterclaims); *Order*, Adv. No. 18-01197, ECF No. 82 (Bankr. D. Colo. June 5, 2020) (granting summary judgment in favor of Mr. Williams with respect to Ms. Williams's § 523(a)(4) claim).

[8] *Verified Amended Complaint to Determine Plaintiff's Equitable Interest in Property (11 U.S.C. § 541(d)) and Objecting to Dischargeability (11 U.S.C. § 523)*, Adv. No. 18-01197, ECF No. 27 (Bankr. D. Colo. March 1, 2019), *in* Appellee's App. at 14.

determination of her ownership interest in the Property and its sale proceeds pursuant to § 541(d), and a judgment imposing an equitable trust over the Property to carry out the terms of the orders entered by the State Court. In her second remaining claim for relief, Ms. Williams sought a determination that the amounts owed to her by Mr. Williams as determined by the State Court are nondischargeable pursuant to § 523(a)(2)(A). For his part, in his last remaining counterclaim,[9] Mr. Williams alleged that Ms. Williams violated the automatic stay under 11 U.S.C. § 362(a)(3) by causing over $4,300 in domestic support payments to be refused by Weld County officials. Mr. Williams also asked for an award of attorney's fees and costs under § 523(d).

On January 8, 2021, after a trial on the merits, the Bankruptcy Court entered an *Order* (the "Adversary Order")[10] and *Judgment*.[11] Under the Adversary Order and Judgment, the Bankruptcy Court entered relief (a) in favor of Ms. Williams on her claim under § 541(d), concluding that her vested equitable interest in the Property is not property of Mr. Williams's bankruptcy estate; (b) in favor of Mr. Williams on Ms. Williams's § 523(a)(2)(A) claim; and (c) in favor of Ms. Williams on Mr. Williams's counterclaim for damages for violation of § 362(a)(3). The Adversary Order and Judgment did not address Mr. Williams's request for fees and costs under § 523(d).

---

[9] *Answer, Affirmative Defenses, Mandatory Counterclaims & Permissive Counterclaims – Second Amended*, Adv. No. 18-01197, ECF No. 46 (Bankr. D. Colo. July 12, 2019), *in* Appellee's App. at 91.

[10] Appellee's App. at 199.

[11] Appellant's App. at 49.

6

On January 22, 2021, Mr. Williams filed a motion to alter or amend the judgment under Bankruptcy Rule 9023 (the "Rule 9023 Motion")[12], noting his previous request for fees and costs under § 523(d) and asking the Bankruptcy Court to award him such fees and costs. Mr. Williams also asked the Bankruptcy Court to reconsider its ruling in favor of Ms. Williams on her § 541(d) claim. On the same day, Mr. Williams also filed a notice of appeal[13] of the Adversary Order and Judgment. Ms. Williams did not cross-appeal.

Mr. Williams later filed with the Bankruptcy Court his designation of record and statement of issues on appeal, listing the following issues:

1. The bankruptcy court erred when it did not apply federal bankruptcy law to equitable notions of constructive trusts under Colorado law.

2. The bankruptcy court erred when it did not apply federal bankruptcy law to lis pendens, property settlements and judgments in divorce.

3. The bankruptcy court erred and abused its discretion when it did not award attorney fees and costs to the Defendant/Debtor as the prevailing party under the non-dischargeability claims.[14]

On January 28, 2021, the Bankruptcy Court entered an order (the "Reconsideration Order")[15] regarding the Rule 9023 Motion, refusing to alter or amend its findings on Ms. Williams's § 541(d) claim and addressing Mr. Williams's § 523(d) fee request for the first time. The Bankruptcy Court denied the request to award fees and costs to Mr. Williams under § 523(d) because the Bankruptcy Court found Ms. Williams was substantially

---

[12] Appellee's App. at 210.

[13] Appellee's App. at 213.

[14] *Appellant's Designation of the Record and Statement of Issues*, Adv. No. 18-01197, ECF No. 120 (Bankr. D. Colo. Feb. 5, 2021).

[15] Appellee's App. at 215.

justified in filing her § 523(a)(2)(A) claim. Mr. Williams did not file another notice of appeal or an amended notice of appeal after the Bankruptcy Court entered the Reconsideration Order.

## II.      JURISDICTION

This Court has jurisdiction to hear timely filed appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit, unless one of the parties elects to have the district court hear the appeal.[16] The Adversary Order and Judgment and Reconsideration Order disposed of all remaining claims in the Adversary Proceeding and thus are final.[17] Mr. Williams filed his notice of appeal of the Adversary Order and Judgment timely on January 22, 2021, within fourteen days of entry of the Bankruptcy Court's Judgment.[18] The notice of appeal became effective when the Bankruptcy Court entered the Reconsideration Order.[19] Neither party elected to have the district court hear the appeal. The Court thus has jurisdiction over the appeal of the Adversary Order and Judgment.[20]

---

[16] 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr. P. 8003, 8005.

[17] *In re Durability, Inc.*, 893 F.2d 264, 266 (10th Cir. 1990) (noting that "the appropriate 'judicial unit' for application of these finality requirements in bankruptcy is not the overall case, but rather the particular adversary proceeding or discrete controversy pursued within the broader framework cast by the petition").

[18] *See* Fed. R. Bankr. P. 8002(a)(1).

[19] *See* Fed. R. Bankr. P. 8002(b)(2).

[20] Had Mr. Williams not filed his Rule 9023 Motion, and thus had the Bankruptcy Court not entered the Reconsideration Order, Mr. Williams could have argued on appeal that the Bankruptcy Court abused its discretion by not addressing his properly pled request for fees and costs under § 523(d). To the extent Mr. Williams argues that the Bankruptcy Court initially abused its discretion by refusing to address his § 523(d) request, that argument is

Mr. Williams did not file a second notice of appeal or an amended notice of appeal after the Bankruptcy Court entered the Reconsideration Order. Under Bankruptcy Rule 8002(b)(3), if a party intends to challenge an order disposing of a Rule 9023 motion, the party must file another notice of appeal or an amended notice of appeal.[21] Interpreting the similarly worded Federal Rule of Appellate Procedure, the United States Court of Appeals for the Tenth Circuit dismissed for lack of appellate jurisdiction an appeal from a reconsideration order under similar circumstances:

> The authorities point to a single conclusion: When an appellant challenges an order ruling on a motion governed by Appellate Rule 4(a)(4)(B)(ii) [such as a motion to alter or amend the judgment], a new or amended notice of appeal is necessary even if the issue raised in the motion and sought to be challenged could also have been challenged in an appeal from the final judgment. Because we cannot excuse non-compliance with the jurisdictional requirements of Appellate Rule 4, *see Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 317, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988), B55 and Mr. McArthur's failure to comply with these requirements precludes us from considering their challenges to the district court's order denying the Rule 59(a) motion. As such, we dismiss these challenges for lack of appellate jurisdiction.[22]

---

moot because the Bankruptcy Court cured that error by denying the fee request in the Reconsideration Order, which Mr. Williams did not appeal.

[21] Fed. R. Bankr. P. 8002(b)(3) ("*Appealing the Ruling on the Motion.* If a party intends to challenge an order disposing of any motion listed in subdivision (b)(1)—or the alteration or amendment of a judgment, order, or decree upon the motion—the party must file a notice of appeal or an amended notice of appeal. The notice or amended notice must comply with Rule 8003 or 8004 and be filed within the time prescribed by this rule, measured from the entry of the order disposing of the last such remaining motion.").

[22] *Husky Ventures, Inc. v. B55 Invs., Ltd.*, 911 F.3d 1000, 1010 (10th Cir. 2018).

Under *Husky Ventures*, the BAP lacks appellate jurisdiction over Mr. Williams's challenge to the Reconsideration Order. We therefore dismiss the portion of Mr. Williams's appeal challenging the Bankruptcy Court's § 523(d) determination for lack of jurisdiction.

## III.    STANDARDS OF REVIEW

The Bankruptcy Court's interpretation of Bankruptcy Code provisions, including § 541(d), is reviewed de novo.[23] The Bankruptcy Court's interpretation of Colorado divorce law is also reviewed de novo.[24] Any factual findings by the Bankruptcy Court are reviewed for clear error.[25] "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."[26] If the trial court's account of the evidence is plausible in light of the record viewed in its entirety, an appellate court may not set aside those findings even though it would have weighed the evidence differently had it been sitting as the trier of fact.[27] "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."[28] When

---

[23] *In re Liehr*, 439 B.R. 179, 182 (10th Cir. BAP 2010) (interpretation of Bankruptcy Code provisions presents only legal issues that are reviewed de novo).

[24] *Salve Regina Coll. v. Russell*, 499 U.S. 225, 231 (1991) ("We conclude that a court of appeals should review *de novo* a district court's determination of state law.").

[25] *Keys Youth Servs., Inc. v. City of Olathe, KS*, 248 F.3d 1267, 1274 (10th Cir. 2001).

[26] *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).

[27] *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573–74 (1985).

[28] *Id.* at 574.

10

reviewing findings of fact under the clearly erroneous standard, "the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility."[29]

## IV.     DISCUSSION

Mr. Williams argues on appeal that the Bankruptcy Court erred in determining that Ms. Williams had an equitable interest in the Property and that her interest is not property of Mr. Williams's bankruptcy estate.[30] The Bankruptcy Court was correct on both points.

Section § 541(d) of the Bankruptcy Code provides in relevant part:

> Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.[31]

Ms. Williams's interests, if any, in the Property are created and defined by state law; this Court should not disturb her rights in property unless a federal interest requires a different result.[32] We thus must look to Colorado law to determine whether Ms. Williams had an equitable property interest in the Property and proceeds rather than a mere unsecured claim.

---

[29] Fed. R. Civ. P. 52(a)(6); *see also* Fed. R. Bankr. P. 7052 (applying Fed. R. Civ. P. 52 to adversary proceedings).

[30] Mr. Williams does not challenge on appeal the Bankruptcy Court's determination that Ms. Williams did not violate the automatic stay under 11 U.S.C. § 362(a)(3).

[31] 11 U.S.C. § 541(d).

[32] *Butner v. United States*, 440 U.S. 48, 55 (1979).

Almost fifty years ago, in *In re Questions Submitted*,[33] the Colorado Supreme Court addressed the creation of an equitable interest in a spouse's property when a dissolution-of-marriage action is filed:

> During the marriage, and absent any divorce action, the parties have their separate property and, possibly subject to an exception or two, can dispose of it as he or she desires. . . . [I]t has always been the law here—and still is—that in the dissolution proceeding a wife may be entitled to a division of the husband's property. That right, prior to the dissolution action and possibly subject to an exception or two, is completely inchoate.
>
> However, at the time of the filing of the dissolution action in which the division of property will be later determined, a vesting takes place. This interest which has vested is inchoate only in the sense that, prior to the division, the property to be transferred to the wife has not yet been determined. Upon and after the filing of the action, the rights of the wife are analogous to those of a wife who can establish a resulting trust, irrespective of a divorce action, in the property of the husband. We use this analogy because we are not saying that after the filing of the divorce action it is necessary for both spouses to enter into the conveyance of property held in the name of only one. Upon the filing of the action the court may protect this vested interest of the wife pending the division order, even though the property to be transferred to her has not yet been determined.[34]

Relying on *In re Questions Submitted*, the Bankruptcy Court concluded that Ms. Williams's inchoate interest in the Property vested in her upon the filing of the dissolution-of-marriage action. According to the Bankruptcy Court, that vesting, coupled with the ordered sale of the Property and division of the sale proceeds under the Permanent Orders, plus Ms. Williams's filed lis pendens, gave her an equitable interest in the Property under

---

[33] *In re Questions Submitted by the U.S. District Court for the District of Colorado*, 517 P.2d 1331 (Colo. 1974) (en banc).

[34] *In re Questions Submitted*, 517 P.2d at 1335.

Colorado law that did not become property of Mr. Williams's bankruptcy estate.[35] The Bankruptcy Court's legal conclusion about the vesting of Ms. Williams's equitable interest in the Property and proceeds is consistent with *In re Questions Submitted*. The Bankruptcy Court's related legal conclusion that her interest was excluded from property of Mr. Williams's estate correctly applies § 541(d). Mr. Williams tries to avoid these straightforward and sound legal conclusions with three primary arguments, all equally unpersuasive.

First, Mr. Williams suggests that Ms. Williams "has only alleged a garden variety property settlement in a divorce proceeding" and that the Property was not subject to any kind of partition in the divorce proceeding.[36] To the contrary, "upon the commencement of a dissolution proceeding, the wife has an interest in the marital property in the nature of a co-owner, rather than as a mere creditor of her husband."[37] Ms. Williams had a vested

---

[35] *Cf. Ebel v. Ebel (In re Ebel)*, 144 B.R. 510, 514 (D. Colo. 1992) ("On its face, § 541(d) thus excludes from the estate property that the debtor holds in constructive trust for another."; noting exception for strong-arm powers). Notwithstanding Mr. Williams's extensive briefing on constructive trusts, the Bankruptcy Court below did not order its own constructive trust or base its ruling on any constructive trust determination by the State Court. Instead, the Bankruptcy Court simply concluded that Ms. Williams had a vested equitable interest in the Property due to the filing of the dissolution-of-marriage action, the ordered sale of the Property, and division of the sale proceeds under the Permanent Orders, plus Ms. Williams's filed lis pendens.

[36] Appellant's Opening Br. at 13-14.

[37] *In re Harms*, 7 B.R. 398, 399 (Bankr. D. Colo. 1980) (concluding that nondebtor spouse had an equitable interest in real property due to prebankruptcy vesting of interest upon filing of dissolution action and due to division orders that specifically set aside to her certain real property or the proceeds from the sale thereof).

13

equitable interest in the Property before Mr. Williams filed for bankruptcy. That interest is excluded from Mr. Williams's estate under § 541(d) of the Bankruptcy Code.

Second, Mr. Williams argues that because Ms. Williams did not record her equitable interest (such as by recording the Permanent Orders) prior to the bankruptcy filing, the bankruptcy trustee may avoid the interest using his status as a bona fide purchaser,[38] thus rendering Ms. Williams's real property interest worthless. This argument fails on at least two levels. Even if a chapter 13 trustee could theoretically use strong-arm powers under § 544(a), the chapter 13 trustee in Mr. Williams's bankruptcy case (so far as the record reflects) never filed an adversary proceeding to avoid Ms. Williams's interest and recover it for the benefit of the estate.[39] And just as important, Mr. Williams does not enjoy such strong-arm powers himself.[40]

---

[38] *See* 11 U.S.C. § 544(a)(3) (giving a trustee the rights and powers of a bona fide purchaser of real property).

[39] *See* Fed. R. Bankr. P. 7001(1)-(2) (requiring the filing of an adversary proceeding to recover property or to determine the validity, priority, or extent of an interest in property).

[40] *Hansen v. Green Tree Servicing, LLC (In re Hansen)*, 332 B.R. 8, 16 (10th Cir. BAP 2005) ("We therefore hold that Chapter 13 debtors lack statutory standing to exercise the trustee's avoidance powers under § 544."). Moreover, even if Mr. Williams somehow had the status of bona fide purchaser, the record does not reflect that he filed an adversary proceeding to avoid Ms. Williams's interest and recover it for the benefit of the estate, and none of Mr. Williams's counterclaims below contained such a request. And had he filed such a proceeding or counterclaim, it would have failed in any event because his interest is inferior to Ms. Williams's interest since she recorded her lis pendens prior to the bankruptcy, thus giving the world notice of her interest and defeating Mr. Williams's claimed status as bona fide purchaser. *See, e.g., In re Harms*, 7 B.R. at 399-400 (noting that under Colorado law, a bona fide purchaser of realty who records his interest will cut off the rights of a previous transferee who fails to record, but also noting that a wife—upon the commencement of a dissolution action—may file a lis pendens, which will operate as notice to all of the wife's claims). *Cf. Sky Harbor, Inc. v. Jenner*, 435 P.2d 894, 896–97 (Colo. 1968) (noting that a "bona fide purchaser of real estate *without notice of an*

14

Third, relying on *In re Harms*, Mr. Williams argues that Ms. Williams has a personal-property interest in the equity in the Property (not a real-property interest in the Property itself) that is inferior to his rights as a levying creditor.[41] This argument likewise fails even if Ms. Williams's interest somehow is construed as a personal-property interest. As noted above, the chapter 13 trustee never filed an adversary proceeding to avoid Ms. Williams's interest and recover it for the benefit of the estate, and Mr. Williams has no such strong-arm powers himself.[42]

---

*unrecorded deed*" prevails over a negligent interest owner who does not record) (emphasis added) (quoting *Wedman v. Carpenter*, 173 P. 57 (Colo. 1918)); *Fleming v. McFerson*, 28 P.2d 1013, 1014 (1933) ("[I]f before the recording of the deed the judgment creditor, *without notice of the conveyance*, files a transcript of the judgment, the lien of his judgment is superior to the rights of the grantee in the deed.") (emphasis added).

[41] Presumably Mr. Williams is referring to 11 U.S.C. § 544(a)(1) and (a)(2) (giving a trustee the rights and powers of a hypothetical judicial lien creditor and unsatisfied execution creditor). It is not clear why Mr. Williams characterizes Ms. Williams's interest as a personal-property interest when it is instead a real-property interest. *See In re Harms*, 7 B.R. at 399 (concluding that nondebtor spouse had an equitable interest in real property due to prebankruptcy vesting of interest upon filing of dissolution action and due to division orders that specifically set aside to her certain real property or the proceeds from the sale thereof). In any event, as explained in this Opinion, the result is the same no matter how we characterize her interest: Ms. Williams's equitable interest is excluded from Mr. Williams's bankruptcy estate.

[42] Moreover, even if Mr. Williams had strong-arm powers, Colorado appears to recognize the effectiveness of a lis pendens as to personal property (other than certain negotiable instruments and articles of commerce) involved in a lawsuit; here, Mr. Williams disclosed the dissolution-of-marriage action in the statement of financial affairs filed on the bankruptcy petition date, and prior to the bankruptcy filing, Ms. Williams filed in the State Court dissolution-of-marriage action a Notice of Recordation of Lis Pendens, giving constructive notice of her claimed interest in the Property and proceeds, which were subject to the dissolution-of-marriage action, and defeating Mr. Williams's claimed status as levying creditor. *See In re Harms*, 7 B.R. at 400-01 (in a case involving an *unrecorded* interest in personal property, concluding that chapter 11 trustee prevailed over unrecorded equitable interest in that property (citing *Sky Harbor, Inc. v. Jenner*, 435 P.2d 894 (1968)); *Sky Harbor*, 435 P.2d at 896–97 (noting that a judgment creditor stands on the same footing

Because Colorado law gave Ms. Williams a vested equitable interest in the Property upon the filing of the dissolution-of-marriage action, and because such interest has never been avoided under § 544, Ms. Williams had an equitable interest in the Property that was not part of Mr. Williams's bankruptcy estate. The Bankruptcy Court correctly decided the issue. We therefore affirm.

## V.     CONCLUSION

We **AFFIRM** the Bankruptcy Court's determination that Ms. Williams had an equitable interest in the Property and proceeds and that her interest was not property of Mr. Williams's bankruptcy estate under Bankruptcy Code § 541(d). We **DISMISS** for lack of appellate jurisdiction Mr. Williams's challenge to the Bankruptcy Court's § 523(d) fee determination.

---

as that of an innocent purchaser, and they prevail over an *unrecorded* interest as to which they have no notice); *Powell v. Nat'l Bank of Commerce in Denver*, 74 P. 536, 538-39 (Colo. App. 1903) (noting that lis pendens applies to both real property and personal property and that purchaser with notice of litigation involving personal property takes subject to the claims in that proceeding). Mr. Williams highlights the discussion in *In re Harms* related to the Tenth Circuit opinion *Panton v. Lee*, 261 F.2d 183 (10th Cir. 1958). *Panton* is not on point because it applies Oklahoma law and because the divorce decree in that case—as noted by the Tenth Circuit—was ineffective to transfer any interest to the wife because the divorce decree did not describe the personal property, did not order ownership in common, did not divide the property, and did not require the payment of any specific sum. *Panton*, 261 F.2d at 186. The Permanent Orders in the State Court did what the divorce decree in *Panton* did not.